# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Xiong Xiong

**(b)** County of Residence of First Listed Plaintiff: Hudson County,NJ
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Aaron Eiesland, Eiesland Law, 2902 West Main St., Suite 3, Rapid City, SD 57702, (605) 545-7667

## DEFENDANTS

VIVOS xPOINT INVESTMENT GROUP, LLC; FRACTIONAL VILLAS, INC. d/b/a/ THE VIVOS GROUP; ROBERT K.

County of Residence of First Listed Defendant: San Diego County, CA
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

Other:
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark
- ☐ 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☒ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit (15 USC 1681 or 1692)
- ☐ 485 Telephone Consumer Protection Act
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity)***:
18 U.S.C. §§ 1961-1968.

Brief description of cause:
Breach of contract action reaching into a RICO action

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE ________ DOCKET NUMBER ________

DATE: Sep 3, 2026

SIGNATURE OF ATTORNEY OF RECORD: /s/ Aaron D. Eiesland

**FOR OFFICE USE ONLY**

RECEIPT # ________ AMOUNT ________ APPLYING IFP ________ JUDGE ________ MAG. JUDGE ________

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**.** (See Section III below**; NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related cases, if any. If there are related cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH DAKOTA**
**WESTERN DIVISION**

| | | |
|---|---|---|
| XIONG XIONG,<br><br>Plaintiff,<br>v.<br><br>VIVOS xPOINT INVESTMENT GROUP, LLC; FRACTIONAL VILLAS, INC. d/b/a/ THE VIVOS GROUP; ROBERT K. VICINO; and THE VICINO FAMILY TRUST, DATED 7/26/01,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 5:26-cv-05109<br><br>**DEMAND FOR JURY TRIAL** |

**COMPLAINT**

Plaintiff Xiong Xiong ("Plaintiff"), by and through his undersigned counsel Latimer LeVay Fyock LLC, hereby brings this Complaint against Defendants Vivos xPoint Investment Group, LLC ("VxIG"), Fractional Villas d/b/a The Vivos Group ("Fractional Villas"), Robert K. Vicino ("Vicino"), and the Vicino Family Trust, dated 7/26/01 (the "Trust") (collectively, "Defendants"), and alleges as follows:

**THE PARTIES**

1. Plaintiff is an individual resident of New Jersey. Plaintiff is a member of VxIG holding 1,000,000 Units, representing a 13.33% membership interest.

2. VxIG is a South Dakota limited liability company, with its principal office located at 985 Jeffrey Road, Del Mar, California 92014.

3. Fractional Villas is a California corporation, with its principal office located at 985 Jeffrey Road, Del Mar, California 92014.

4. Vicino is an individual resident of California. Vicino is the Trustee of the Trust, and the designated individual representative of the Trust in its capacity as Managing Member of VxIG. Vicino is also the CEO, CFO, and sole director of Fractional Villas.

5. The Trust is an express trust of which Vicino is the sole Trustee. The Trust is a member of VxIG holding 6,400,000 Units, representing an 85.33% membership interest. Although VxIG is registered as a member-managed limited liability company, its LLC Agreement (as hereinafter defined) appoints the Trust as Managing Member

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because such claims are so related to the federal claim as to form part of the same case or controversy.

7. Venue is proper in the District of South Dakota, Western Division, pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred within this District.

### The Work Letter Agreement and Failed Bunker Buildout

8. On or about March 31, 2020, Vicino and Fractional Villas represented to Plaintiff that Fractional Villas could provide a "turnkey finish" of a bunker at the xPoint development in Fall River County, South Dakota (the "Property") for $110,000.

9. Vicino represented that the turnkey package would include life-safety equipment, air filtration, waterproofing, finished flooring, electrical and power systems, plumbing, septic,

kitchen, and all labor, resulting in a finished interior with power, air, water and sewage ready for interior furnishings.

10. On or about April 3, 2020, Plaintiff leased a bunker structure at the Property from Fractional Villas and paid $110,000 for a turnkey interior build-out pursuant to a Vivos xPoint Bunker Work Letter Agreement (the "Work Letter Agreement"). A true and correct copy of the Work Letter Agreement is attached hereto as **Exhibit 1**.

11. The Work Letter Agreement required Fractional Villas to substantially complete the improvements, including waterproofing, flooring, plumbing, electrical, air filtration, a generator, kitchen appliances, and a solar energy system, within 150 days.

12. On April 3, 2020, Plaintiff wire-transferred $110,000 to Fractional Villas pursuant to the Work Letter Agreement.

13. Fractional Villas failed to perform under the Work Letter Agreement. After the 150-day deadline passed without completion of the bunker, Plaintiff demanded that Vicino provide a list of materials purchased and a refund.

14. On October 30, 2020, after failing to complete the bunker in 150 days as required, Vicino sent Plaintiff $17,445.00 by ACH characterizing the payment as the repurchase price for equipment Plaintiff had bought for the project. The bunker was never constructed as promised.

15. Fractional Villas also failed to deliver the community-wide amenities that Vicino represented were imminent. From December 2021 through June 2025, Vicino sent written communications to xPoint members, including Plaintiff, representing that amenities at the Property including a laundromat, mail station, gym, health clinic, and restaurant were nearly completed or would be completed by the spring.

16. As of March 2024, Vicino admitted that mail was still not yet being delivered to the Property.

17. On June 16, 2024, Plaintiff was notified that Fractional Villas would only then "break ground next week" on the laundromat, approximately two and one-half years after Vicino had represented the same facility was nearly completed.

18. On information and belief, other than the laundry bunker, none community-wide amenities were ever built as represented by Vicino and Fractional Villas.

**The Subscription Agreement and Plaintiff's Investment**

19. On or about April 4, 2020, one day after Plaintiff entered into the Work Letter Agreement, Vicino transmitted to Plaintiff the "Vivos xPoint Investment Executive Summary," soliciting Plaintiff's investment in VxIG. A true and correct copy of the Vivos xPoint Investment Executive Summary is attached hereto as **Exhibit 2**.

20. Vicino represented to Plaintiff that the project comprised 575 fortified concrete-and-steel military bunkers like the bunker Plaintiff had purchased with an estimated replacement cost of over $500 million; that the project would generate projected investor returns of 577% cumulatively through 2024; and that VxIG would provide turnkey bunker buildouts as a significant revenue stream.

21. In reliance on Vicino's representations regarding the bunker buildout and the project, including that Plaintiff's own bunker was being built out as promised, that the community infrastructure and amenities were forthcoming, and that the project would generate substantial returns from bunker sales and construction service, Plaintiff wired $500,000 on April 24, 2020, and an additional $500,000 on April 27, 2020, to the account designated by Vicino for Plaintiff's

investment in VxIG. The wire transfers were directed to and received by "FRACTIONAL VILLAS INC" at JPMorgan Chase Bank.

22. The $1,000,000 investment did not appear in VxIG's accounts until May 8, 2020, eleven days after the funds arrived in Fractional Villas' account, and only then as an entry on a Profit & Loss Statement and transaction report.

23. On or about May 1, 2020, the Trust formed VxIG as a South Dakota limited liability company for the purpose of acquiring, developing, and leasing bunker properties at the Property.

24. On or about May 1, 2020, Plaintiff executed a Subscription Agreement with VxIG, subscribing for 1,000,000 membership units at $1.00 per unit, for a total investment of $1,000,000. The Subscription Agreement provides that Plaintiff would acquire a 13.33% membership interest in VxIG. A true and correct copy of the Subscription Agreement is attached hereto as **Exhibit 3**.

25. Plaintiff's wire transfers resulted in a total investment of $1,000,000 in VxIG, representing a 13.33% membership interest.

26. The Subscription Agreement, at Section 2(g), defines the Management Fee as 20% of "Gross Profit Proceeds." The Subscription Agreement defines "Gross Profit Proceeds" as "aggregate gross sales or lease proceeds LESS the amount paid for all costs, expenses, taxes, obligations and liabilities of the LLC then due."

27. The Subscription Agreement, at Section 6, provides that it shall be governed by and construed in accordance with the laws of the State of South Dakota. Section 2(e) provides that books and records shall be available at 985 Jeffrey Road, Del Mar, California 92014.

**The LLC Agreement**

28. On or about May 1, 2020, VxIG's LLC Operating Agreement (the "LLC Agreement") was executed by the Trust and the Unit Holders (as defined therein), including Plaintiff. A true and correct copy of the LLC Agreement is attached hereto as **Exhibit 4**.

29. Under Section 5.1 of the LLC Agreement, the Trust is the Managing Member, and Vicino is the Trust's designated individual representative.

30. Section 3.1.2 of the LLC Agreement provides that the Management Fee equals 20% of aggregate Gross Profit Proceeds, payable as installments, deducted from income as a guaranteed payment under IRC § 707(c).

31. Section 3.1.1 of the LLC Agreement defines "Distributable Cash" as all gross receipts LESS (i) costs, expenses, and taxes then due; (ii) the Management Fee; and (iii) reserves. Section 3.4.1 provides that Distributable Cash shall be distributed to Members proportionally to their Profit and Loss Interests.

32. Section 5.3.3 of the LLC Agreement provides that the Managing Member shall not possess or assign VxIG property for other than a VxIG purpose.

33. Section 10.4 of the LLC Agreement provides that all funds of VxIG will be deposited in its name and in such bank accounts as the Managing Member shall reasonably determine.

**Ongoing Diversion and Commingling of VxIG Revenue and Expenses**

34. Despite collecting $110,000 from Plaintiff for the bunker buildout and $1,000,000 for his VxIG investment, Vicino, VxIG, and Fractional Villas diverted funds to personal and affiliate expenditures rather than bunker construction or community infrastructure.

35. VxIG-related receipts, including bunker lease payments, membership dues, and other revenue, moved through or were directed to accounts owned, controlled, or associated with Fractional Villas or other entities, or to accounts not clearly identified or segregated as VxIG accounts. VxIG's Sublease Agreements direct lessee payments to "Fractional Villas, Inc. d/b/a The Vivos Group" at JPMorgan Chase Bank, not to VxIG.

36. VxIG-related expenses have moved through or were paid from accounts owned, controlled, or associated with Fractional Villas or other entities, or from accounts not clearly identified or segregated as VxIG accounts. On November 21, 2025, Vicino sent an email to all VxIG members directing that ALL future payments be remitted to "FRACTIONAL VILLAS INC dba The Vivos Group" at a specific account and routing number.

37. The LLC Agreement requires that all VxIG funds be held in accounts in VxIG's name. By diverting and commingling VxIG revenue and expenses through Fractional Villas' accounts, Defendants have violated the LLC Agreement and breached their fiduciary duties to Plaintiff and the LLC.

**<u>Miscalculation of Management Fee</u>**

38. The Subscription Agreement and LLC Agreement both define the Management Fee as 20% of "Gross Profit Proceeds," that is, 20% of gross revenue MINUS all costs, expenses, taxes, obligations, and liabilities then due.

39. Despite this clear contractual definition, Vicino's own certified Profit & Loss Statement computed the Management Fee as a flat 20% of GROSS REVENUE: $7,481,792.27 × 20% = $1,496,358.45, without deducting any costs or expenses.

40. This calculation method violates the express terms of the Subscription Agreement and LLC Agreement, resulting in a substantial overcharge to VxIG and its members.

**Unexplained "Commissions 10%"**

41. Vicino's certified Profit & Loss Statement contained a line item entitled "Commissions 10%" in the amount of $748,179.23, which is exactly 10% of gross revenue ($7,481,792.27). No payee is identified for this amount.

42. Separate documents account for a smaller, documented commission line of $154,902.96 paid to identified third parties but contain no transactions or documentation supporting the $748,179.23 line item.

43. The $748,179.23 in unexplained "Commissions" represents funds that have been extracted from VxIG without authorization, documentation, or legitimate business purpose.

**Personal and Affiliate Expenses Charged to VxIG**

44. Vicino has caused VxIG to pay personal and affiliate expenses that are not legitimate VxIG expenses, including but not limited to:

a. Approximately $75,366.84 in aircraft expenses (fuel, insurance, maintenance, and storage) for a 2004 Cessna that is FAA-registered to Fractional Villas, Inc., not VxIG;

b. $126,000 in "Rent Office Space" for the period of May 8, 2020, through June 30, 2025, covering office space at Vicino's personal residence at 985 Jeffrey Road, Del Mar, California;

c. Consumer subscriptions (streaming services and similar personal expenses);

d. $24,000 for "United Miles" airline loyalty purchases.

45. These personal expenditures were funded from VxIG revenue held in Fractional Villas' checking account (labeled "FV/VIVOS GROUP EXPENSES" in bank records), further demonstrating the commingling and misappropriation of company funds.

**Failure to Maintain Books and Records; Late Tax Reporting**

46. Despite Plaintiff's repeated requests, Defendants have never produced a general ledger or balance sheet for VxIG.

47. The Profit & Loss Statement ultimately provided by Vicino was reconstructed years after the fact from Fractional Villas' records, not from VxIG's own books.

48. K-1 tax forms have arrived approximately six months late every year, causing Plaintiff repeated tax filing problems and necessitating extensions and amendments.

49. Vicino has refused to identify VxIG's CPA despite repeated requests.

50. When Plaintiff requested access to VxIG's books and records, Vicino stated that "books are available at our office per the contract"—the "office" being Vicino's personal residence in Del Mar, California.

**Broken Promises of Distributions**

51. Since Plaintiff's $1,000,000 investment in April 2020, Plaintiff has received only $20,057 in total distributions over more than five years: $13,980 on January 27, 2022, and $6,077 on December 27, 2022.

52. Vicino has repeatedly promised distributions to Plaintiff that have never materialized, including:

a. April 12, 2024: Vicino stated "[t]his year should generate a mid year distribution;"

b. September 21, 2024: Vicino promised "a large payment before December 31, 2024 to catch up."

53. None of these promised distributions materialized.

**Distributions Owed to Plaintiff**

54. On August 24, 2025, Vicino transmitted to Plaintiff the certified Profit & Loss Statement covering May 8, 2020 through June 30, 2025, along with a cover email.

55. In the email, Vicino quoted the correct net-of-costs fee definition from the Subscription Agreement yet attached a Profit & Loss Statement that computed the Management Fee on gross revenue (not net of costs), in direct contradiction of the quoted contractual language.

56. Vicino certified in the email: "I believe this report is true and accurate. There is an amount due to you and Catherine."

57. The certified Profit & Loss Statement shows "Distributions Due Pre Tax" of $218,414.21 to Plaintiff at 13.33%, representing Plaintiff's share of pre-tax distributable cash.

58. Despite certifying that distributions were due, Vicino refused to pay.

**COUNT I**
**BREACH OF CONTRACT**
**(*Against VxIG and the Trust*)**

59. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

60. Plaintiff and VxIG entered into the Subscription Agreement on or about May 1, 2020, pursuant to which Plaintiff invested $1,000,000 in exchange for 1,000,000 membership units (13.33% interest) in VxIG.

61. Plaintiff and the Trust (as Managing Member) entered into the LLC Agreement governing VxIG's operations, management, and distributions.

62. The Subscription Agreement and LLC Agreement are valid, binding, and enforceable contracts.

63. VxIG and the Trust, through Vicino as the Trust's designated representative, have breached the Subscription Agreement and LLC Agreement in the following respects, among others:

a. Failing to calculate the Management Fee as 20% of Gross Profit Proceeds (net of costs) as required by Section 2(g) of the Subscription Agreement and Section 3.1.2 of the LLC Agreement, and instead computing the fee as 20% of gross revenue;

b. Failing to distribute Distributable Cash to Plaintiff in proportion to his P&L Interest as required by Section 3.4.1 of the LLC Agreement;

c. Possessing and assigning VxIG property for other than a VxIG purpose in violation of the LLC Agreement, including by routing VxIG-related receipts and expenses

through accounts associated with Fractional Villas' bank and other accounts without adequate segregation or accounting, and paying personal expenses from VxIG-related funds, in violation of the LLC Agreement and Defendants' fiduciary duties;;

d. Failing to maintain adequate books and records; and

e. Failing to provide timely K-1 tax forms.

64. Plaintiff has performed all conditions precedent under the Subscription Agreement and LLC Agreement.

65. As a direct and proximate result of Defendants' breaches, Plaintiff has suffered damages in an amount to be proven at trial, including but not limited to: (a) at least $218,414.21 in admitted but unpaid distributions; (b) the difference between the Management Fee as properly calculated (20% of net) and as improperly charged (20% of gross); (c) Plaintiff's pro rata share of the unexplained $748,179.23 in "Commissions"; (d) Plaintiff's pro rata share of personal expenses improperly charged to VxIG; and (e) lost investment returns.

**COUNT II**
**BREACH OF FIDUCIARY DUTY – DIRECT CLAIM**
**(*Against VxIG, Vicino, and the Trust)***

66. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

67. Under South Dakota law and the LLC Agreement, the Managing Member (the Trust) and its designated representative (Vicino) owe fiduciary duties of loyalty, care, and good faith to Plaintiff and the other members of VxIG.

68. Defendants VxIG (through its Managing Member), Vicino, and the Trust have breached their fiduciary duties to Plaintiff by, among other things:

a. Failing to properly segregate and account for Plaintiff's $1,000,000 investment, which the transactions records identify as being sent to Fractional Villas;

b. Routing VxIG-related receipts and expenses through accounts associated with Fractional Villas;

c. Engaging in self-dealing by causing VxIG to pay Vicino's personal expenses (aircraft, office space at Vicino's personal residence, consumer subscriptions, airline miles) and expenses associated with Fractional Villas;

d. Miscalculating the Management Fee to overcharge VxIG and enrich the Trust at the expense of passive members;

e. Approving and extracting $748,179.23 in undocumented "Commissions" from VxIG;

f. Failing to distribute Distributable Cash owed to Plaintiff while repeatedly making false promises of distribution;

g. Failing to maintain proper books and records;

h. Failing to produce timely K-1s; and

i. Refusing to identify VxIG's accountant.

69. These breaches of fiduciary duty have caused Plaintiff direct, individual harm distinct from any harm to VxIG, including the deprivation of distributions specifically owed to Plaintiff, tax filing complications, and impairment of the value of Plaintiff's membership interest.

70. As a direct and proximate result of these breaches, Plaintiff has suffered damages in an amount to be proven at trial, including but not limited to compensatory damages, disgorgement of improperly diverted funds, and consequential damages.

## COUNT III
## VIOLATION OF 18 U.S.C. § 1962(c) – RICO
## (Against All Defendants)

71. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

72. This Count is brought pursuant to 18 U.S.C. § 1964(c), which provides that any person injured in his business or property by reason of a violation of 18 U.S.C. § 1962 may sue in

any appropriate United States district court and shall recover threefold the damages sustained, plus costs of suit, including reasonable attorney's fees.

73. At all relevant times, Defendants VxIG, Fractional Villas, the Trust, and Vicino, constituted an association-in-fact enterprise (the "Enterprise") within the meaning of 18 U.S.C. § 1961(4).

74. The Enterprise is engaged in the development, marketing, sale, and leasing of bunker properties at the xPoint complex in Fall River County, South Dakota.

75. The Enterprise has an ascertainable structure with Vicino at the apex, directing the operations of all component entities, and a common purpose of generating and distributing revenue from bunker sales, leases, and memberships.

76. The Enterprise is distinct from Defendant Vicino, who conducted and participated in the conduct of the Enterprise's affairs through a pattern of racketeering activity.

77. Defendants, principally through Vicino, conducted and participated in the conduct of the Enterprise's affairs through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5), consisting of multiple acts of wire fraud (18 U.S.C. § 1343), as set forth below.

78. **Wire Fraud Predicate Acts (18 U.S.C. § 1343).** The following constitute predicate acts of wire fraud, each involving the use of interstate wire communications in furtherance of a scheme to defraud Plaintiff and VxIG of money and property through material misrepresentations and omissions:

a. On or about April 24, 2020, Vicino caused the solicitation and receipt, via interstate electronic wire communications, of a $500,000 wire transfer from Plaintiff, directing payment to Fractional Villas;

b. On or about April 27, 2020, Vicino caused the solicitation and receipt, via interstate electronic wire communications, of a second $500,000 wire transfer from Plaintiff under the same fraudulent scheme;

c. From May 8, 2020, through the present, Vicino caused repeated wire transfers between VxIG's account to Fractional Villas' accounts for the purpose of paying personal expenses, in furtherance of the scheme to divert and commingle VxIG assets;

d. On or about August 24, 2025, Vicino transmitted via email the certified Profit and Loss Statement that materially misrepresented the Management Fee calculation by computing it on gross revenue rather than net profit, while simultaneously quoting the contractual definition requiring net-of-costs calculation, thereby furthering the scheme to conceal the overcharge;

e. On or about November 21, 2025, Vicino transmitted via email a directive to all VxIG members instructing them to remit ALL payments to Fractional Villas, Inc. at a new bank account;

f. On or about April 12, 2024 and September 21, 2024, Vicino transmitted via email and/or text message false promises of distributions to Plaintiff, each transmission furthering the scheme by inducing Plaintiff's continued reliance and inaction while funds continued to be diverted and commingled and while distributions remained unpaid;

g. From 2020 through 2025, multiple wire transfers routed VxIG revenue and expenses through Fractional Villas' bank accounts rather than through accounts in VxIG's name; and

h. From 2021, through 2025, Vicino transmitted untimely K1 statements to Plaintiff from VxIG's deficient books and records, furthering the scheme to misrepresent VxIG's financial status and operations.

79. **Relatedness and Continuity.** The predicate acts described above are related because they all serve the same scheme and common purpose: to divert VxIG revenue and assets to Vicino and his affiliated entities (principally Fractional Villas) while misrepresenting VxIG's financial status and operations to passive investors. The predicate acts demonstrate continuity because:

a. They span a period of years;

b. They involve numerous predicate acts over that period;

c. They pose a continuing threat of repetition, because Defendants continue to control VxIG's management and payment practices and distributions remain unpaid.

80. As a direct and proximate result of Defendants' violations of 18 U.S.C. § 1962(c), Plaintiff has been injured in his business and property, including but not limited to: (a) the loss of at least $218,414.21 in distributions due but unpaid; (b) overcharges to VxIG from inflated management fees; and (c) extraction of unexplained "Commission"" from VxIG.

81. Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to recover threefold his actual damages, plus costs of suit, including reasonable attorney's fees.

**COUNT IV**
**RICO CONSPIRACY – 18 U.S.C. § 1962(d)**
**(Against All Defendants)**

82. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

83. Defendants, and each of them, have conspired to violate 18 U.S.C. § 1962(c) in violation of 18 U.S.C. § 1962(d).

84. Each of Defendants agreed to participate, directly or indirectly, in the conduct of the Enterprise's affairs through a pattern of racketeering activity. Specifically:

a. Vicino directed the scheme from its inception, directing the handling of Plaintiff's investment and all subsequent VxIG-related receipts and expenses through or among accounts associated with Fractional Villas' and other accounts, computing inflated management fees, extracting undocumented commissions, and making repeated false promises of distributions;

b. The Trust, as VxIG's Managing Member, acted through Vicino as its designated representative in the management of VxIG and is alleged to be responsible for the breaches of the LLC Agreement and fiduciary duties described above;

c. Fractional Villas was the recipient of Plaintiff's investment wires and maintained accounts through which certain VxIG-related transactions were processed;

d. VxIG, under the control of Vicino through the Trust, was the entity whose books and records were falsified and/or not adequately maintained and whose assets were diverted or used for purposes other than a VxIG company purpose.

85. As a direct and proximate result of Defendants' conspiracy in violation of 18 U.S.C. § 1962(d), Plaintiff has been injured in his business and property in the same manner set forth in Count III above.

86. Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to recover threefold his actual damages, plus costs of suit, including reasonable attorney's fees.

**COUNT V**
**FRAUDULENT INDUCEMENT**
**(Against Vicino, the Trust, and Fractional Villas)**

87. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

88. Vicino, acting as the designated representative of the Trust and as a principal of Fractional Villas, represented to Plaintiff that Fractional Villas could provide a "turnkey finish" of a bunker at the Property for $110,000, including life-safety equipment, air filtration, waterproofing, finished flooring, electrical and power systems, plumbing, septic, a kitchen, and all labor, resulting in a finished interior with power, air, water, and sewage ready for interior furnishings, as reflected in the Work Letter Agreement.

89. Vicino and Fractional Villas represented to Plaintiff that community-wide amenities, including a laundromat, mail station, gym, health clinic, and restaurant, were imminent, nearly completed, or would be completed shortly, when in fact they were not nearly completed and were not delivered as represented.

90. Vicino represented that the project comprised 575 fortified concrete-and-steel military bunkers with an estimated replacement cost of over $500 million, would generate projected investor returns of 577% cumulatively through 2024, and would generate significant revenue for VxIG from turnkey bunker buildouts.

91. Vicino further represented that Plaintiff's own bunker was being built out as promised, that community infrastructure and amenities were forthcoming, and that the project would generate substantial returns from bunker sales and construction services.

92. Vicino made the aforementioned representations to induce Plaintiff to invest $1,000,000 in VxIG while Fractional Villas was failing to perform the Work Letter Agreement.

93. At the time these representations were made, Vicino and Fractional Villas knew, or recklessly disregarded, that Fractional Villas could not deliver the turnkey bunker buildouts as promised, that the community amenities were not nearly completed and would not be delivered as represented, and that the projected returns were not achievable.

94. Vicino and Fractional Villas made these material misrepresentations with the intent to deceive Plaintiff and to induce him to rely on them, including by inducing Plaintiff to enter into the Work Letter Agreement and the Subscription Agreement and to invest a total of $1,110,000.

95. Vicino made these misrepresentations while acting as Fractional Villas' principal and the Trust's designated representative.

96. Plaintiff justifiably relied on Vicino and Fractional Villas' representations. The representations were made by the principals of the entities with purported special knowledge of the Property and project, and Plaintiff had no independent means to verify the truth of the representations concerning the project's status, the promised buildout, community amenities, or financial projections.

97. As a direct and proximate result of Vicino and Fractional Villas' fraudulent inducement, Plaintiff suffered damages, including but not limited to: (a) the $110,000 paid under the Work Letter Agreement, less the $17,445 returned; (b) the $1,000,000 invested in VxIG

pursuant to the Subscription Agreement; (c) lost investment returns; and (d) other consequential damages.

**COUNT VI**
**ACCOUNTING**
**(Against All Defendants)**

98. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

99. A fiduciary and/or contractual relationship exists between Plaintiff and Defendants with respect to the management and operation of VxIG and its assets.

100. Defendants have received and had under their control funds belonging to VxIG and Plaintiff, including but not limited to Plaintiff's $1,000,000 investment, VxIG-related revenue, and VxIG-related funds held in or routed through accounts associated with Fractional Villas and other accounts.

101. Defendants have failed and refused to provide Plaintiff with a full, complete, and accurate accounting of all VxIG funds received, expended, and held, including but not limited to:

a. All bank accounts in which VxIG funds have been deposited (whether in VxIG's name or otherwise);

b. All expenditures from VxIG funds;

c. The identity and compensation of all persons receiving "Commissions" from VxIG; and

d. The disposition of all revenue received from bunker sales, leases, and memberships.

102. Plaintiff is entitled to a full and complete accounting of all funds received, expended, held, or otherwise managed on behalf of VxIG from the date of its formation through the present.

**COUNT VII**
**UNJUST ENRICHMENT / CONSTRUCTIVE TRUST**
**(Against Vicino and Fractional Villas)**

103. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

104. Plaintiff conferred a benefit upon Defendants Vicino and Fractional Villas by investing $1,000,000 through the account designated by Vicino, which was deposited directly into Fractional Villas' bank account. Additionally, VxIG revenue belonging in part to Plaintiff has been routed through Fractional Villas' accounts and used for Vicino's personal benefit.

105. Defendants Vicino and Fractional Villas have been unjustly enriched by receiving and retaining funds that belong to VxIG and Plaintiff, including:

a. Plaintiff's $1,000,000 investment;

b. VxIG operating revenue routed through accounts associated with Fractional Villas and other accounts;

c. The overcharged Management Fee (the excess above what is permitted by contract);

d. The $748,179.23 in undocumented "Commissions"; and

e. Personal expenses paid from VxIG funds.

106. Defendants Vicino and Fractional Villas appreciated and had knowledge of the benefit conferred.

107. Under the circumstances, it would be inequitable for Defendants Vicino and Fractional Villas to retain the benefit without payment of its value to Plaintiff and VxIG.

108. Plaintiff is entitled to the imposition of a constructive trust over all VxIG funds and assets held by or traceable to Vicino and Fractional Villas, including but not limited to funds held in Fractional Villas' JPMorgan Chase account (ending in 3793) and US Bank account (account number ending in 6221), and any real or personal property acquired with diverted VxIG funds.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Xiong Xiong, respectfully prays that this Court enter judgment in his favor and against Defendants, and award the following relief:

A. Compensatory damages in an amount to be proven at trial, including but not limited to unpaid distributions, improperly diverted funds, overcharged management fees, undocumented commissions, and personal expenses charged to VxIG;

B. Treble damages pursuant to 18 U.S.C. § 1964(c) on Plaintiff's RICO claims (Counts III and IV);

C. Disgorgement of all profits, benefits, and compensation obtained by Defendants through their wrongful conduct;

D. A full and complete accounting of all funds received, expended, held, or managed on behalf of VxIG from the date of its formation through the present;

E. Imposition of a constructive trust over all VxIG funds and assets held by, or traceable to, Fractional Villas, Inc. and Robert K. Vicino;

F. Injunctive relief and asset preservation, including an order (i) prohibiting Defendants from further diverting VxIG funds to Fractional Villas or any other entity not authorized by the LLC Agreement; (ii) requiring Defendants to maintain all VxIG funds in accounts in VxIG's name; and (iii) freezing assets traceable to diverted VxIG funds pending resolution of this action;

G. Reasonable attorneys' fees and costs of suit, including as authorized under 18 U.S.C. § 1964(c);

H. Pre-judgment and post-judgment interest at the highest rate allowed by law;

I. Such other and further relief as this Court deems just and equitable.

**PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Dated: September 3, 2026

Respectfully submitted,

Aaron D. Eiesland (SD Bar No. 3164)
ae.law@live.com
2902 W. Main Street, Suite 3
Rapid City, SD 57702
(605) 545-7667